FILED

SEP 28 2022

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) 4:22-cr-531 CDP/SPM |
| VICKY HEFNER, | ) ) |
| Defendant. | ) |

### INDICTMENT

The Grand Jury charges that:

### INTRODUCTION

1. The Social Security Act of 1935 initiated the Unemployment Insurance ("UI") system, which is operated and managed by each state at the direction of the U.S. Department of Labor ("DOL"). In the majority of states, benefit funding is based solely on a tax imposed on employers. However, DOL funds administrative costs associated with each state's UI program. The UI system is designed to provide benefits to persons who are out of work due to no fault of their own, and who meet other eligibility requirements of the state program.

2. Eligibility for UI, benefit amounts, and the length of time benefits are available is determined by each state's laws. In all states, individual claimants must be eligible for employment and actively searching for employment while receiving UI benefits.

3. A claimant receives UI benefits by completing an application at a local "one-stop center," by telephone, or online at each state's website. A claimant must provide the claimant's name, date of birth, social security number, home address, and other personal information. On a

weekly or bi-weekly basis, the claimant then files for weekly payment benefits by certifying that the claimant is unemployed, eligible for benefits, and is seeking employment.

4. The state agencies authorize their financial services sections to release unemployment compensation funds in the form of either: (a) a state contracted debit card mailed to the applicant; (b) a direct deposit into a pre-paid debit card account; (c) a direct deposit into the claimant's designated bank account; (d) or in rare cases, some states will issue a check, if requested.

5. As relevant to this Indictment, direct deposits of UI funds were completed through the automated clearing house ("ACH"), an electronic funds-transfer system that facilitates payments within the United States. From time to time, the UI deposits may be coded with identifiers showing the state of the UI claim's origin or the name of the individual associated with the UI claim whose identity is used to make the claims.

### COVID-19, the National Emergency, and FPUC

6. According to the United States Centers for Disease Control and Prevention ("CDC"), Coronavirus Disease 2019 ("COVID-19") is a respiratory illness that can spread from person to person. COVID-19 can attack human lungs and kill infected persons, especially those who have certain risk factors identified by the CDC.

7. Section 2104 of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (March 27, 2020), entitled "Emergency Increase in Unemployment Compensation Benefits," provided for an additional $600 weekly payment, known as "Federal Pandemic Unemployment Compensation" or "FPUC," to certain eligible individuals who were receiving other UI benefits under state law.

8. To further offset the pandemic impact on American workers, on August 8,

2020, President Trump authorized the Federal Emergency Management Agency ("FEMA") to expend up to $44 billion dollars from the Disaster Relief Funds for lost wage payments. The President authorized the FEMA Administrator to provide grants to participating states, territories, and the District of Columbia to administer delivery of Lost Wage Assistance ("LWA") funding.

9. The Pandemic Unemployment Assistance ("PUA") program is a program for individuals who were self-employed, gig workers, independent contractors, and those who otherwise do not qualify for regular unemployment benefits and have been impacted by the coronavirus. Under the PUA program, those who qualify will be eligible for weekly benefit payments of between $133 and $320 per week plus a $600 federal supplement available under the FPUC program.

**The Defendant**

10. The defendant, Vicky Hefner ("HEFNER"), was employed with the Department of Labor and Industrial Relations, Division of Employment Security as a benefit program specialist.

11. On September 1, 2009, HEFNER started work with the Missouri Division of Employment Security ("MODES").  MODES has its headquarters located in Jefferson City, Missouri, in the Eastern District of Missouri.  At all times relevant to this Indictment, MODES maintained a bank account with Central Trust Bank.

12. HEFNER's work locations included the City of St. Louis, Missouri and her home, both of which are in the Eastern District of Missouri.

13. HEFNER was responsible for assisting claimants file their claims over the phone and adjudicating any issues claimants were having with their UI claims.

14. Beginning on or about July of 2020, HEFNER approved ineligible claimants for UI benefits, including LWA funding.

15. From July of 2020 through December of 2020, HEFNER logged into the accounts of approximately eight people who were her friends, relatives, and associates.

16. HEFNER changed the status claims for friends, family, and associates within the MODES system, otherwise referred to as UI Interact.

17. HEFNER used her credentials to manipulate the claims in various ways in order to increase claimants' weekly benefit amount and make them eligible for unemployment benefits when they were not otherwise eligible.

18. HEFNER accessed the MODES UInteract to backdate her friends' and relatives' UI benefit claims and change PUA to regular unemployment to fraudulently increase the amount of benefits each claimant received.

19. HEFNER used her employee credentials to change her son's claim "issue type" from "quit" to "discharge," even after the claimant's employer statement verified the "quit" status. The employer was not notified so they could not appeal the determination.

20. HEFNER had been made aware that those operations for family and associates were against MODES policy.

21. Through her actions, HEFNER allowed employees of various local companies to receive benefits from MODES even while they were employed.

22. After claimants were improperly paid due to HEFNER's scheme, they were instructed to pay HEFNER a portion of the fraudulent benefit funds paid to them by MODES.

23. HEFNER's fraudulent alteration of UI benefit claims caused approximately $140,500 in loss.

## COUNTS I-III
### (Theft of Public Money)

24. Each of the allegations of Paragraphs 1 through 23 of this Indictment is hereby incorporated by reference as if fully set forth herein.

25. On or about each of the dates set forth below, in the Eastern District of Missouri, the defendant,

**VICKY HEFNER,**

willfully and knowingly did steal and purloin funds from MODES, of a value exceeding $1,000, of the goods and property of the United States, in violation of 18 U.S.C. § 641:

| COUNT | DATE | TRANSACTION |
| --- | --- | --- |
| I | December 12, 2020 | Alteration to MODES UInteract system |
| II | July 29, 2020 | Alteration to MODES UInteract system |
| III | October 30, 2020 | Alteration to MODES UInteract system |

All in violation of Title 18, United States Code, Section 641.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Sections 981(a) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 641 as set forth in Count(s) 1-3, the defendant shall forfeit to the United States of America any property, real or personal, constituting or derived from any proceeds traceable to such violations.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real

or personal, constituting or derived from any proceeds traceable to said violations, the amount of which is at least $140,500.

     3.     If any of the property described above, as a result of any act or omission of the defendant:

     a.     cannot be located upon the exercise of due diligence;

     b.     has been transferred or sold to, or deposited with, a third party;

     c.     has been placed beyond the jurisdiction of the court;

     d.     has been substantially diminished in value; or

     e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

                                            A TRUE BILL.


                                            _____
                                            FOREPERSON

SAYLER A. FLEMING
United States Attorney


_____
Edward L. Dowd III, #61909(MO)
Assistant United States Attorney